*190 JUDGMENT (Denying Petition for Stay and Temporary Restraining Order)
JOAN GREENDEER-LEE, Associate Judge.
INTRODUCTION
Before the Ho-Chunk Nation Trial Court and the Honorable Joan Greendeer-Lee, the parties in the above-named proceeding offered oral ai’guments on September 25, 1997. Appearing on behalf of the plaintiff was Attorney Mark Goodman and on behalf of the defendants Attorney William Boulware from the Ho-Chunk Nation [hereinafter HCN] Department of Justice. On September 19, 1997, the plaintiff filed the Motion for Temporary Restraining Order and Stay and the Petition for Temporary Restraining Order and, Injunction. The plaintiff moved the Court on the Motion for Immediate Hearing on September 19, 1997. Upon review of the merits of the plaintiffs request and as outlined in her affidavit attached to the Motion for Immediate Hearing, this Court granted and heard oral arguments on the plaintiffs Motion for a Temporary Restraining Order and Stay. This Order memorializes the decision of the Court based on the oral arguments offered during the September 25,1997 hearing.
*191 PROCEDURAL HISTORY
This is a constitutional challenge to the authority of the HCN Legislature to remove its own members. The plaintiff Diane Lone Tree, a HCN Legislator representing Area V, was removed on September 3, 1997 as a result of actions by the defendants, herein named in their individual capacities, who all serve as legislators for the Ho-Chunk Nation in various districts. Ms. Lone Tree was in the middle of a four-year term having been elected in June 1995. The plaintiff seeks a stay and temporary restraining order from this Court to prevent a Special Election scheduled for Saturday, September 27, 1997 for two Area V At-Large seats vacated as a result of plaintiffs removal and the recent voluntary resignation of another Area V Legislator.
APPLICABLE LAW
Ho-Chunk Nation Constitution, Art. Ill
§ 1. Sovereignty. The Ho-Chunk Nation possesses inherent sovereign powers by virtue of self-government and democracy.
Ho-Chunk Nation Constitution, Akt. VII
§ 5. Jurisdiction of the Judiciary, (a) The Trial Court shall have original jurisdiction over all cases and controversies, both criminal and civil, in law or in equity, arising under the Constitution, laws, customs, and traditions of the Ho-Chunk Nation, including cases in which the Ho-Chunk Nation, or its officials and employees, shall be a party. Any such case or controversy arising within the jurisdiction of the Ho-Chunk Nation shall be filed in the Trial Court before it is filed in any other court. This grant of jurisdiction by the General Council shall not be construed to be a waiver of the Nation’s sovereign immunity.
Ho-Chunk Nation Constitution, Art. VII
§ 6. Poivers of the Trial Court, (a) The Trial Court shall have the power to make findings of fact and conclusions of law. The Trial Court shall have the power to issue all remedies in law and in equity including injunctive and equitable relief and all writs including attachment and mandamus.
Ho-chunk Nation Constitution, Art. IX
§ 3. Legislative Removal of Legislators. The Legislature may remove a member of the Legislature for good cause. Any member of the Legislature subject to removal shall be informed of the charges, be given adequate notice of the impending removal action, and given an opportunity to prepare and present a defense including presenting witnesses and other evidence. An affirmative vote of three-fourths (3/4) of the entire Legislature shall be required for all Legislative removal actions under this Section. The Legislator subject to removal shall not vote.
§ 10. Vacancies in the Legislature. If a vacancy occurs in the Legislature because of death, mental or physical incapacity, removal or recall vote, resignation, felony conviction, or for any other reason, such vacancy shall be filled in the following manner:
(a) If three (3) months or more remain before the next General Election, the Election Board shall call a Special Election in the appropriate District to be held within thirty (30) days.
Ho Chunk Nation Constitution, Art. XII
§ 1. Immunity of Nation from Suit. The Ho-Chunk Nation shall be immune from suit except to the extent that the Legislature expressly waives its sovereign immunity, and officials and employ *192 ees of the Ho-Chunk Nation acting within the scope of their duties or authority shall be immune from suit.
Ho-Chunk Nation Constitution, Art. XII
§ 2. Suit Against Officials and Employees. Officials and employees of the Ho-Chunk Nation who act beyond the scope of their duties or authority shall be subject to suit in equity only for declaratory and non-monetary injunctive relief in Tribal Court by persons subject to its jurisdiction for purposes of enforcing rights and duties established by this constitution or other applicable laws.
Ho-Chunk Nation Judiciary Act of 1995
§ 2. Jurisdiction, The Ho-Chunk Judiciary shall exercise jurisdiction over all matters within the power and authority of the Ho-Chunk Nation including controversies arising out of the Constitution of the Ho-Chunk Nation; laws, statutes, ordinances, resolutions and codes enacted by the Legislature; and such other matters arising under enactments of the Legislature or the customs and traditions of the Ho-Chunk Nation. This jurisdiction extends over the Nation and its territory, persons who enter its territory, its members, and persons who interact with the Nation or its members wherever found.
Ho-Chunk Nation Election Ordinance 12 HCO § 1.01 to § 9.01
Art. XIV. Sec. 14.01 Challenges to the Election Results.
(a)The results of an election may be challenged in accordance with Article VIII, Section 7 of the Constitution which states:
Section. 7 Challenges of Election Results. Any member of the Ho-Chunk Nation may challenge the results of any election by filing suit in the Trial Court within ten (10) days after the Election Board certifies the election results. The Trial Court shall hear and decide a challenge to any election within twenty (20) days after the challenge is filed in the Trial Court.
(b) The person challenging the election results shall prove by clear and convincing evidence that the Election Board violated the Election Ordinance or otherwise conducted an unfair election, and that the outcome of the election could have been different.
(c) If the Trial Court invalidates the election results, a new election shall be held as soon as possible.
Art. XVII. Sec. 17.01 Vacancies.
(c) Vacancies in the Legislature shall be filled in accordance with Article IX, Section 10 of the Constitution which states:
Section 10. Vacancies in the Legislature. If a vacancy occurs in the Legislature because of death, mental or physical incapacity, removal or recall vote, resignation, felony conviction, or for any other reason, such vacancy shall be filled in the following manner:
(a) If three (3) months or more remain before the next General Election, the Election Board shall call a Special Election in the appropriate District to be held within thirty (30) days.
HCN PERSONNEL POLICIES AND PROCEDURES Manual
Ch. 3, p. 5 Unclassified Employees: The Unclassified service is composed of those top management positions that serve at the will of the Ho-Chunk Nation. Such positions include elected or appointed positions.
Ch. 12, p. 42 General. Conduct of Employees: An obligation rests with every *193 employee of the Ho-Chunk Nation to render honest, efficient, and courteous performance of duties. Employees will therefore be responsible and held accountable for adhering to all Tribal policies, rales, directives, and procedures prescribed by the Nation through supervisory or management personnel.
Ch. 14, p. 51 Discipline of Unclassified Staff: Discipline of the Unclassified Staff shall be as specified by the President and/or the Legislature in accordance with the Constitution of the Ho-Chunk Nation.
FINDINGS OF FACT
1. The Ho-Chunk Nation, formerly known as the Wisconsin Winnebago Tribe, is a federally-recognized Indian tribe.
2. Pursuant to the Secretarial election authorized by the Deputy Commissioner of Indian Affairs on September 17, 1994, the Ho-Chunk Nation Constitution was adopted, thereby recognizing that four governing bodies exist, one of which includes the Legislature.
3. Diane Lone Tree, the plaintiff, is an adult member of the Ho-Chunk Nation.
4. On or about September 15, 1995, Ms. Lone Tree took the oath office as an Area V Legislative representative.
5. From August 20, 1997 to present, the defendants Elliott Garvin, Dallas White Wing, Gerald Cleveland, Kevin Greengrass, Robert Mudd, Wade Black-deer, Clarence Pettibone, and Robert Funmaker, Jr. are current members of the Ho-Chunk Nation Legislative body.
6. One or two weeks prior to August 20, 1997, District I held an area meeting whereby the members motioned for the removal of Diane Lone Tree. [See Plaintiff s Exhibit A],
7. Plaintiffs Exhibit A is a memorandum-like document that identifies Clarence Pettibone, Vice President; Robert Anthony Mudd, Legislator District 1; Elliott Garvin, Legislator District I as the authors.
8. Plaintiffs Exhibit A is addressed to the plaintiff and it’s body articulates five charges detailing good cause to bring a motion for removal of Diane Lone Tree as Legislator.
9. On August 20, 1997, the Ho-Chunk Nation President called to order at 9:30 a.m. the Legislative meeting. The draft minutes indicate that the President and eight of the ten legislators, including the plaintiff Lone Tree, were present. (Vice President Clarence Pettibone and Rep. Dallas White Wing were excused.) [See Plaintiffs Exhibit B].
10. As noted on Plaintiffs Exhibit B, Lone Tree arrived at 10:22 a.m., at which time a letter from Reps. WhiteEa-gle and Lone Tree was offered.
11. At 10:30 a.m. of the August 20th meeting, it recessed and reconvened at 10:45 a.m.
12. During the September 25, 1997 Oral Arguments Hearing, the defendant referred to the additional Legislative motions during the time from 10:45 a.m. until 11:40 a.m. as shown on Plaintiffs Exhibit B. References from that record were read to the Court that begin when Rep. Garvin requested that it be noted that District I Area Meeting,
MOTION by Tara Snowball that Representative Diane Lone Tree and Representative Marlys Whiteagle [sic] be removed from Office and to pursue a legal suit within the Ho-Chunk Nations Courts. Second by Tina McAr-thur. 32-0-0 Motion Carried.
MOTION by Rep. Garvin to immediately relieve Reps. Lone Tree and Whiteagle [sic] of their duties for *194 fourteen (14) days with pay pending the hearing results in two weeks. Second by Rep. Mudd. 6-0-2 (Reps. Lone Tree, Whiteagle) Motion Carried.
MOTION by Rep. Garvin to take a ten minute recess for order to be obtained in the meeting. Second by Rep. Funmaker. 8-0-0 Motion Carried.
13. On the Plaintiffs Exhibit B, “Mr. Gary Brownell, Acting Attorney General was asked to be present per request from Reps. Lone Tree and Whiteagle [sic] for Legal Counsel.”
MOTION by Rep. Garvin to rescind the previous motion under Letter from Reps. Whiteagle and Lone Tree. Second by Rep. Mudd 6-0-2 (Reps. Whiteagle [sic], Lone Tree) Motion Carried.
14. The Court noted the remaining motions during the August 20, 1997 meeting in reference to the plaintiff as:
MOTION by Rep. Garvin to formally present the removal charges to Rep. Lone Tree and Rep. Whiteagle. Second by Rep. Mudd 6-0-2 (Reps. Lone Tree & Whiteagle [sic].)
Rep. WE states that the motion does not have an affirmative vote of 3/4 of the Legislature in accordance to the Ho-Chunk Nation Constitution Article 9, Section 3....
Those Reps will not vote.
MOTION by Rep. Garvin to immediately relieve Reps. Lone Tree and Whiteagle [sic]of their duties for fourteen (14) days with pay pending the hearing results, with the hearing to be scheduled for September 3, 1997 at 10:00 a.m. Second by Rep. Mudd. 3-3(Greengrass, Cleveland, Blackdeer)-2(Reps. Lone Tree, Whiteagle) TIE VOTE. PRESIDENT VOTES NAY. Motion Defeated.
MOTION by Rep. Greengrass to have mandatory attendance of the full Legislature at the next meeting to present charges for removal of Rep. Lone Tree and Whiteagle [sic], MOTION DIES DUE TO LACK OF SECOND.
15. During the September 25, 1997 Hearing, Rep. Mudd testified that Area I Rep. Garvin handed Plaintiffs Exhibit A to the plaintiff as he read the motion offered by his Area I constituents. (See Plaintiffs Exhibit A).
16. Representative Mudd testified that at the Legislative meeting of August 20th, the plaintiff was not given a specific hearing time because the legislative motion failed to carry all the proper votes.
17. At the September 3, 1997 Legislative meeting, plaintiff Lone Tree was removed from office.
18. The Ho-Chunk Nation’s General Elections recently occurred on June 3, 1997, the first Tuesday in June of odd-numbered years. As a result, the Election Board by virtue of the Ho-Chunk Nation Constitution had to arrange a Special Election upon the official notice by the Legislature that they removed then-Legislator Lone Tree.
19. Counsel for plaintiff Lone Tree admitted on the record that he had been unsuccessful in attempts to contact her and could not explain her absence from the September 25, 1997 Hearing.
DECISION
The Appropriate Standard for Stays/ TROs
Although the focus of the request for a Stay and Temporary Restraining Order was originally quite broad, the Court has narrowed the issues considerably. Under well-settled principles estab *195 lished by this Court, the applicable standard for issuing a stay is the same as that used by federal courts to decide upon a preliminary injunction. See, Merrill, Lynch, Pierce, Fenner & Smith v. Salvano, 999 F.2d 211 (7th Cir.1993). The four relevant inquiries include: (1) is there an adequate remedy at law in the form of money damages? (2) does the threatened harm to plaintiff outweigh the threatened harm to defendant(s)? (3) does the plaintiff have a reasonable likelihood of success on the merits? and (4) would the issuance of a stay disserve the public interest? See, Joyce Warner v. HCN Election Board, CV 95-03 (HCN Tr. Ct. June 26, 1995); Tracy Thundercloud, v. HCN Election Board, CV 95-16 (HCN Tr. Ct. August 28, 1995); Coalition for a Fair Government II v. Chloris A. Lowe, Jr. and Kathyleen Lone Tree-Whiterabbit, CV 96-22 (HCN Tr. Ct. July 23, 1996); Loa Potter v. Chloris Lowe, Jr., CV 95-23 (HCN Tr. Ct. October 2, 1996); Chloris A. Lowe, Jr. v. HCN, HCN Legislature, and HCN General Council, CV 97-12 (HCN Tr. Ct. March 21, 1997).
1. Is there an adequate remedy at law in the form of money damages?
During oral argument held on September 25, 1997, defense counsel never challenged the assertion of plaintiff that only some form of equitable relief would be appropriate. After all, it is uncontested that plaintiff alleges a constitutional claim based on her removal as an Area V Representative by her colleagues in the HCN Legislature. Money damages cannot place her back into office, temporarily stave off the impending Special Election, undo the actions of a governing body, nor provide for her re-election.
Moreover, as the plaintiff sees fit to pursue the various defendants in their individual capacities under Ho-Chunk Nation Constitution, Art. XII § 2 by asserting that they acted beyond the scope of their authority, the sovereign immunity issues faced in most similar cases are nonexistent. Case law holds that such individuals, if in fact it is determined that they acted beyond the scope of their authority, may be subject to suit in equity for declaratory and non-monetaiy injunctive relief. Chloris A. Lowe, Jr. v. HCN, HCN Legislature, and HCN General Council, CV 97-12 (HCN Tr. Ct. March 21, 1997). This Court recognizes that the relief pursued by plaintiff in this matter necessarily remains equitable in nature and thus satisfies the first prong of the preliminary injunction standard.
2. Does the threatened harm to plaintiff outweigh the threatened harm to defendant(s)?
The damage that the plaintiff seeks to prevent, and in a sense undo, could be characterized as the improper removal of a properly elected official and a violation of the plain meaning of the HCN Constitution Art. IX, § 3. The plaintiff through her counsel has argued that she enjoys a property right in her position as Legislator and such a removal works as an illegitimate attempt to deprive her of that interest. Aside from the tangible harm as a result of her removal, the plaintiff also asserts a hypothetical harm. As the plaintiff is already on the ballot for the September 27, 1997 Special Election, nothing exists to protect her from the remaining Legislators who might choose to “gang” up on her and again remove her on the same grounds. The Court cannot assume the responsibility if such a result were to occur. The fact remains that gaps exist in Ho-Chunk law which do not preclude certain removed officials from immediately seeking the same office in a mandatory Special Election. Similarly, there are no provisions to insulate a re-elected official who was previ *196 ously removed through legitimate means. These considerations are for the Legislature itself to consider, and this Court will not assume the role of substantive law maker even if the result amounts to a potentially endless back and forth of removal and re-election.
The threatened harm to the defendants in this case is similarly grave. A decision in favor of the plaintiff might effectively chill the internal legislative processes created in the HCN Constitution, Aet. IX that specifically permits the monitoring and policing among their own members. It could be argued that this Court would do a significant disservice to the Nation by opening the door for future claimants to further stifle regulatory mechanisms, in the Legislature or otherwise. Furthermore, a responsibility is incumbent upon all elected officials to maintain a high level of dignity and integrity. To remove a check and balance in the relatively new Ho-Chunk Nation system of governance upsets a delicate balance that is only beginning to be understood and appreciated.
3. Does the plaintiff have a reasonable likelihood of success on the merits?
In numerous circumstances, this Court has addressed the issue of removal and established a rational and thorough analysis which remains applicable here. The analysis of whether or not the plaintiff has a reasonable likelihood of success on the merits turns on two basic issues: one, the definition of good cause, and two, whether plaintiff was provided with adequate notice which offered grounds demonstrating good cause and supplied an opportunity to respond. Coalition for a Fair Government II v. Chloris A. Lowe, Jr. and, Kathyleen Lone Tree-Whiterabbit, CV 96-22, p. 15 (HCN Tr. Ct. July 23, 1996). In the interest of thoroughness, however, this Court will address all of the requirements provided in the text of Art. IX § 3 which states:
The Legislature may remove a member of the Legislature for good cause. Any member of the Legislature subject to removal shall be informed of the charges, be given adequate notice of the impending removal action, and given an opportunity to prepare and present a defense including presenting witnesses and other evidence. An affirmative vote of three-fourths (3/4) of the entire Legislature shall be required for all Legislative removal actions under this Section. The Legislator subject to removal shall not vote.
a. Did the named defendants act with good cause in seeking the removal of the plaintiff?
The answer to this question is unequivocally yes. In the notice provided to plaintiff Lone Tree at the August 20, 1997 legislative meeting, specific allegations were set out in detailed form, citing to case law and Ho-Chunk Nation policy and procedures. Black’s Law Dictionary defines good cause as “a substantial reason amounting in law to a legal excuse for failing to perform an act required by law.” Throughout the September 25 Hearing, counsel for plaintiff never directly questioned whether or not the legislators possessed good cause in seeking her removal; the concern seemed to focus more on whether or not plaintiff received notice and had an opportunity to respond. While such procedural attacks are proper, in the determination of whether or not plaintiff has a reasonable likelihood of success on the merits of her claim, one would think that at least touching on the underlying substantive complaint would be critical, if not elemental.
*197 b. Was Plaintiff Informed of the Charges and Given Adequate Notice of the Impending Removal Actions?
In light of the chronology of events described herein and the specificity of charges leveled against the plaintiff, it would be almost specious to suggest that the plaintiff was unaware of the charges leveled against her. In Coalition for a Fair Government II v. Chloris A. Lowe, Jr. and Kathyleen Lone Tree-White,rabbit, CV 96-22, p. 15 (HCN Tr. Ct. July 23, 1996), this Court noted various standards to apply when determining whether or not notice was sufficient under a given set of circumstances. In Stands Over Bull v. Bureau of Indian, Affairs, 442 F.Supp. 360(1977), the Tribal Chairman sought to be impeached had at least twelve (12) days to prepare a response to the charges against him. In Coalition, Ona Garvin had only four (4) days but she did not know the specific nature of the allegations against her, James Greendeer received at best a few hours notice and Mary Ann Yazzie had no notice at all.
In Chloris A. Lowe, Jr. v. HCN, HCN Legislature, and HCN General Council, CV 97-12 (HCN Tr. Ct. March 21, 1997), former president Chloris A. Lowe, Jr. claimed he received only four days notice of the charges against him. The Court rejected this contention soundly, noting that in fact Mr. Lowe had known about the surrounding circumstances for months, as well as the particular charges against him. The Court resisted an application of Coalition in the Lowe case and stated, “[N]otice of three working days coupled with the lack of specifics to what alleged malfeasance [the target] was alleged to have committed is too little time to be prepared.” Chloris A. Lowe, Jr. v. HCN, HCN Legislature, and HCN General Council, CV 97-12, p. 18 (HCN Tr. Ct. March 21, 1997), citing Coalition for a Fair Government II v. Chloris A. Lowe, Jr. and Kathyleen Lone Tree-Whiterabbit, CV 96-22, p. 15 (HCN Tr. Ct. July 23, 1996) (Emphasis in original).
As manifested in the notice from the Area I meeting which occurred on or about August 6, 1997 or on or about August 13, 1997, plaintiff Lone Tree cannot make a claim that she was surprised or unaware of either the proceedings or the specific charges which led to her removal. The result of this Area I meeting was read into the legislative record on August 20, 1997 by Rep. Garvin. This provides at least fourteen (14) days to the plaintiff as the written removal motion was physically handed to her at the August 20, 1997 legislative meeting and the removal proceeding was set for two weeks (i.e. September 3, 1997). This uncontested minimum time frame is supported by plaintiffs own Exhibit A and the testimony of Rep. Mudcl at the September 25, 1997 hearing at the Trial Court building which went unchallenged. At most, plaintiff had notice of the action taken by Area I for a full twenty-eight (28) days in that the record is unclear as to whether the Area I action was taken on August 6 or August 13 and when the motion was drafted. Although the plaintiff in its pleadings noted that sometime after August 6, 1997, three defendants, Pettibone, Mudd and Garvin had written an “unsigned, undated, unsworn document” entitled, “Re: District I Motion of the Removal of Diane Lone Tree, District V Legislator” the plaintiff' along with the defense accept such document as evidence for review by this Court. No objections were made in reference to the one missing signature or initials, or missing date. The end result, however, is irrelevant because it is undisputed that plaintiff had at least fourteen (14) days to prepare a defense.
*198 The plaintiff through her counsel would have this Court believe that formal, memorialized charges must be brought against a party before notice may be deemed proper. This Court cannot accept the vision of the HCN Constitution Art. IX § 3 which plaintiff wishes to advance in the guise of plain meaning. In truth, the plaintiff, through her counsel, asks this Court to set an admittedly stringent level of interpretation in which virtually all of the formalities found in the Judiciary become grafted onto the Legislature. “After all, removal is essentially a political judgment of wrongdoing and not a legal one.” Chloris A. Lowe, Jr. v. Ho-Chunk Nation, Ho-Chunk Nation Legislature, and Ho-Chunk Nation General Council, CV 97-12, p. 21 (HCN Tr. Ct. Mar. 21, 1997). This Court remains mindful that the political and legal concerns of this Nation often exist separately and hesitant to adopt a position which threatens to unduly conflate the two complementary, yet independent spheres. Under the U.S. Supreme Court decision of Goss v. Lopez, one who suffers a loss is entitled to “some kind of notice and afforded some kind of hearing.” 419 U.S. 565, 579, 95 S.Ct. 729, 42 L.Ed.2d 725 (1975) (Emphasis in original). As the HCN Constitution does not require more, absent compelling circumstances or persuasion to the contrary this Court will not require more either.
c. Did Plaintiff have Adequate Notice of the Pendant Removal Action Against Her?
While less evident than the presence of specific charges against her, the plaintiff indisputably had adequate notice of the pendency of a removal action. Ho-Chunk Nation case law demonstrates that notice to parties in these circumstances may take many forms which affect their sufficiency and resultant validity. In this case, the Court notes that according to Rep. Mudd’s testimony the notice was handed to plaintiff at the August 20, 1997 legislative meeting. This two and one-half page memorandum sets out in concrete terms the charges against the plaintiff and makes provision for a fourteen (14) day waiting period before holding a hearing so that plaintiff could prepare a defense. While the provided defense permits the introduction of evidence and the presentation of witnesses, it is erroneous for plaintiff to assume that this hearing amounts to a full-scale trial. Clearly, under the HCN Constitution. Art. VII, the Judiciary is entrusted with the duty to provide legal and equitable relief in a venerable Western forum. Various other quasi-judicial provisions are made for other areas of Ho-Chunk governance, but none with the vig- or and responsibility of the HCN Court System. The HCN Policy and Procedures Manual, for example, provides for a rather detailed and progressive administrative grievance process which serves in part as a quasi-judicial oversight of the burgeoning Ho-Chunk bureaucracy. Even at its most formal, however, the procedures and law of judicial proceedings remain inapposite in a legislative removal action.
Plaintiff also places great weight on the documents prepared by Legislative Counsel William Gardner which articulate a structured vision of due process in the legislative removal context. These suggestions were approved at the same September 3, 1997 meeting at which plaintiff was removed. Such documentation and eventual policy is highly laudable and in the long run will prove essential to a system of governance which grows more complex by the day. They cannot, however, serve as firm parameters in some form of retrospective application. In fact, this Court has noted that aspects of Ho-Chunk governance can be improved. So while their actions might reflect only the minimum *199 required under the law, it does not make them constitutionally infirm. See, e.g. Vicki J. Houghton v. HCN Election Board, CV 97-93, p. 11 (HCN Tr. Ct. July 21, 1997). It is, however, irrelevant to the present action as it appears that the suggestions were prepared after the commotion of this incident and thus amount to post-hoc rationalization on the part of plaintiff Lone Tree.
d. Was Plaintiff Given an Opportunity to Prepare and Present a Defense Against the Charges?
The inquiry here is not whether plaintiff in fact mounted a formidable legal campaign to protect her interests, but rather whether she could have prepared and presented a meaningful defense. Chloris A. Loire, Jr. v. HCN, HCN Legislature, and HCN General Council, CV 97-12, p. 19 (HCN Tr. Ct. March 21, 1997). After all, due process, which only guarantees a right to notice and an opportunity to be heard, is “not a technical conception with a fixed content unrelated to time, place and circumstances. Due process is flexible and calls for such procedural protections as the particular situation demands.” Mathews v. Eldridge, 424 U.S. 319, 334, 96 S.Ct. 893, 47 L.Ed.2d 18 (1976). This Court has recognized that fourteen (14) days after actual notice of the specific charges against a person represents more than the minimum required under Ho-Chunk law. Chloris A. Lowe, Jr. v. HCN, HCN Legislature, and HCN General Council, CV 97-12, p. 19 (HCN Tr. Ct. March 21, 1997); Coalition for a Fair Government II v. Chloris A. Lowe, Jr. and Kathyleen Lone Tree-Whiterabbit, CV 96-22, p. 15 (HCN Tr. Ct. July 23, 1996).
The Court would like to turn now to the context of these circumstances. The Election Board is under a clear and undeniable duty to hold a Special Election within thirty (30) days of a vacancy of a Legislator following a removal or recall under Article XVII. Sec. 17.01 Vacancies of the HCN Election Ordinance:
(c) Vacancies in the Legislature shall be filled in accordance with Article IX, Section 10 of the Constitution which states:
Section 10. Vacancies in the Legislature, If a vacancy occurs in the Legislature because of death, mental or physical incapacity, removal or recall vote, resignation, felony conviction, or for any other reason, such vacancy shall be filled in the following manner:
(a) If three (3) months or more remain before the next General Election, the Election Board shall call a Special Election in the appropriate District to be held within thirty (30) days.
There are no exceptions under Ho-Chunk law, constitutional or otherwise. While this Court recognizes that certain circumstances might justify granting a preliminary injunction, the present facts do not implicated such a scenario. See, e.g. Tracy Thundercloud v. HCN Election Board, CV-95-16 (HCN Tr. Ct. August 28, 1995). Such a tight time frame, of which all parties should be apprised, necessitates that the preparation for Special Elections move swiftly. Plaintiff Lone Tree waited a full sixteen (16) days from the September 3 removal hearing to her filing date in this Court on September 19. In the meantime, she joined the ranks of candidates in a bid to reassume her old position as Area V Representative. Over two weeks passed in the interim.
It is uncontested that the plaintiff knew from August 20,1997 forward that pending charges could be brought. A full fourteen (14) days passed from the date of the legislative session and the removal session *200 for plaintiff to prepare and present a defense. The plaintiff was presented with written documentation which specifically laid out the charges and the existence of a removal hearing. Perhaps most importantly, the record reflects that during a recess at the August 20 meeting declared immediately after Rep. Garvin raised the charges, plaintiff Lone Tree and another former legislative representative secured temporary legal counsel in Gary Brownell, acting Attorney General of the HCN. This clearly indicates that the two Legislators not only were aware of the charges against them, but also that they appreciated the gravity of such charges enough to pursue legal counsel. Interestingly, counsel for plaintiff attempted to explain away her absence at the September 25 Hearing which she requested, attributing it to her alleged lack of time to prepare. Absent evidence to the contrary, it appears that plaintiff Lone Tree did not feel compelled to personally appear before the one body that could grant her relief upon a proper showing. The Court was less than satisfied that Counsel for the plaintiff was not prepared to discuss the merits of the constitutional violation that could have changed the course of this decision. Moreover, the Court was not convinced the plaintiff offered some tangible and reasoning showing a possible constitutional violation exists at this point. The Court has already noted that HCN case law holds that under such circumstances, the plaintiff had ample opportunity to bring a defense.
In light of the plaintiffs contention that the Court most recent decision in Chloris A Lowe, Jr. v. HCN, HCN Legislature, and, HCN General Council, CV 97-12, (HCN Tr. Ct. March 21, 1997) states in plain and un-equivoeal language that the HCN, it’s Legislature, and possibly its Election Board are immune from suit, this Court must address this argument. An individual tribal member is not prohibited from suing the Ho-Chunk Nation Election Board, since the decision of Lowe as the plaintiff asserts. It should be noted, the Ho-Chunk Nation Trial Court has heard numerous cases involving the HCN Election Board since that Lowe decision; such as: Nettie Kingsley v. HCN Election Board, (HCN Tr. Ct., May 16, 1997), Robert Greendeer v. HCN Election Board, (HCN Tr. Ct. May 3, 1997), James Green-deer v. HCN Election Board, Wade Black-deer, Kathy Blackdeer and Tara Walters, et. al, (HCN Tr. Ct., July 7, 1997XHCN Tr. Ct., August 25,1997) and Vicki Hough-ton v. HCN Election Board, (HCN Tr.Ct, July 21, 1997). The Court concludes that the plaintiff misinterpreted the Lowe decision in reading in a prohibition exists, thus preventing tribal members suing the HCN Election Board. This Court does not overlook that this subentity of the Ho-Chunk Nation and its governing bodies exercise sovereign immunity. However, even outlined within its own HCN Election Ordinance, there exist specific sections whereby one can sue the Election Board when the business of that Election Board is considered inappropriate. See, Art. XIV, § 14.01. Moreover, during the September 25, 1997 Hearing, the plaintiff requested the Court to enjoin the Election Board and consider an expeditious review of the matter. The Court now faces the dilemma of arranging a hearing and providing notice to another party so that all parties’ rights to proper notice and due process are protected. Furthermore, the plaintiff must amend her Complaint to address possible alleged wrongdoing by the enjoined party. Finally, this Court must remain cognizant of the fact that a Special Election is set in two days [from the date of the September 25 hearing ] weighing a greater constraint on whether the plaintiffs plea for relief bears more weight than postponing the *201 special election of September 27, 1997. The defendant argues that the election is widely publicized. The Court also considered the potential harm that other sixteen (16) eligible candidates and an unpredictable number of write-in candidates would endure by a postponed special election. The Court is mindful that the At-Large/ Area V community remains without any representation in the Legislative body at present.[1]
e. Did an Affirmative Vote of 3/4 of the Entire Legislature Remove the Plaintiff?
As the question of whether or not President Lone Tree’s tie-breaking vote was proper or improper under the circumstances of the August 20, 1997 meeting is not before this forum at present, this Court will not address it. In totality of all the possible facts, testimonials, and evidence that my surround the removal of the plaintiff, the Court shall remain silent until the issue of an affirmative vote of 3/4 of the entire legislature is ripe.
4. Would the issuance of a stay dis-serve the public interest?
Reducing the arguments to their core, it becomes apparent that the heart of this case rests in the tension between the rights of an individual to be treated in accordance with the HCN Constitution and the rights of the composing members of a fundamental governing body to regulate their own within the bounds of the law. Although mindful of a persistent threat of the tyranny of the majority, this Court cannot in good conscience characterize this case in such a manner. There is a distinct difference between a claim which can be substantiated and the claims presented herein. This case becomes more disturbing in light of its potential impact upon other critical operations of tribal government which are only surfieially involved, but fundamentally implicated. This case is not simply a complaint about removal; rather, it directly affects the actions of a HCN agency (the Election Board) and an event involving the exercise of fundamental legal rights of tribal members (the Special Election). Thus, in domino-like fashion, the passage of a single event perhaps only controversial to the plaintiff enters into a critical mass which threatens to upset the balance of the Nation’s election process. The problem remains, however, that the plaintiff has not asserted with sufficient particularity how the named defendants exceeded the scope of their authority. The record simply does not support the hyperbolic harm plaintiff wishes to assert.
CONCLUSION
Under the four prong analysis of preliminary injunctions, the plaintiff has failed to demonstrate that she has a reasonable likelihood of success on the merits of her claim. It has been established that plaintiff received actual notice at several different times, in several different forms. She cannot legitimately claim that she was caught unaware by the proceedings taken by the named defendants. The plaintiff has failed to show by any standard how the named defendants acted beyond the scope of their authority. Aside from the repetitive eonclusory allegations asserted in her pleadings and through her counsel at the September 25 hearing, plaintiff has not provided this Court with any evidence, much less a tenable and structured argu *202 ment, to support her claims. In light of the extraordinary nature of the relief she seeks, oral argument offered plaintiff an opportunity to advance the positions she felt appropriate. To approach the hearing in lackadaisical fashion with little preparation does not comport with the gravity of the claim nor the expediency of its disposition. If the collective constituency of Area V feels that plaintiff Lone Tree represents them in rare form, they have the opportunity to re-elect her as no Ho-Chunk law prevents such an occurrence. Although this remedy remains distasteful to the plaintiff, the value of the process to the people outweighs any harm she might have demonstrated in this matter. This Motion for a Stay and Temporary Restraining Order against the named defendants is hereby denied. Thus, the Special Election will continue as scheduled.
All parties have the right to appeal a final judgment or order of the Trial Court. If either party is dissatisfied with the decision rendered by this Court they may file a Notice of Appeal with the Ho-Chunk Supreme Court within thirty (30) calendar days after the day such judgment or order was rendered. The Notice of Appeal must show service was made upon the opposing party prior to its acceptance for filing by the Clerk of Court. The Notice, which must also show that service was made upon the opposing party, must be filed within thirty (30) calendar days from the date that the final judgment or order is rendered. In addition, the Notice of Appeal must explain why the party appealing believes that the decision is in error. All appellate pleadings must conform with the requirements set by the Ho-Chunk Supreme Court, which are in accordance with the Ho-Chunk Nation Rules of Appellate Procedure.

. Recently filed at the Ho-Chunk Nation Trial Court is Robert A. Mudd v. HCN Election Board, CV97-129, 1997 WL 34671361, 1 Am. Tribal Law 202. The plaintiff is challenging the recent special election results that filled one of the three currently vacant Area V Legislative seats.